McDONALD & COMPANY, Appellant,

v.

J. C. KEMPER, Jr., Appellee.

No. 16589.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 8, 1965.

216

Crocker & McDonald, Scott McDonald, Fort Worth, for appellant.

Max E. Clark, Fort Worth, for appellee.

RENFRO, Justice.

Kemper Cruise Inn, Inc., by J. C. Kemper, Jr., president, executed an exclusive written agency contract authorizing McDonald & Company to sell its property in the J. Armendaris Survey, Tarrant County, for the sum of $197,500 or such sum as it would accept. The contract provided for payment to McDonald the regular fee prescribed in the commission schedule of the Fort Worth Real Estate Board. McDonald & Company sued J. C. Kemper, Jr., for $10,327.62, alleging it had procured a purchaser ready and willing to enter into a contract for the purchase of said property; that for personal reasons defendant elected to sell his capital stock rather than the property of the corporation; that the capital stock was sold at a price of $172,127.05; plaintiff had both a Real Estate Broker's License and a Security Dealer's License.

Both parties moved for summary judgment.

Judgment was entered for defendant.

The facts are undisputed.

Defendant owned all the stock in Kemper Cruise Inn, Inc. He decided a week or ten days after making the contract with plaintiff it would be more advantageous to him to sell the stock rather than dissolve the corporation, but did not tell plaintiff of his decision. Plaintiff procured Wilbur Wright as purchaser on terms acceptable to defendant. On June 9, 1963, plaintiff's representative met with defendant and Wright. On that occasion a work sheet, dated June 9, 1963, was prepared, which showed the purchase price to be $174,400. The work sheet showed an item of "$10,464 commission due McDonald to be paid in cash out of $18,000 cash down payment." Defendant initialed the work sheet. He admitted, by deposition, that was his understanding of the amount the commission would be. At his request $7,500 paid by Wright was held by plaintiff in escrow. Defendant refused to pay the commission because the stock rather than

the assets of the corporation was sold. He never told plaintiff he would not pay commission for that reason.

His sale to Wright was closed on July 1, 1963.

■ The fact that defendant decided to sell all the stock, 100% of which was owned by him personally, instead of the corporate assets, would not alone defeat plaintiff of recovery. It was plaintiff's diligence and efforts that brought the parties together. The manner in which defendant and Wright consummated the deal was simply a means to the end desired. The trade as completed simply involved a method for accomplishing the sale of defendant's property to the buyer on terms which defendant deemed advantageous to himself. Cranke v. Trinity Gravel Co., 272 S.W. 604 (Dallas Civ.App., 1925); see Trinity Gravel Co. v. Cranke, 282 S.W. 798 (Tex.Com.App., 1926); Hard v. Hall, 318 S.W.2d 108 (Fort Worth Civ. App., 1958, reversed on other grounds); Hall v. Hard, 160 Tex. 565, 335 S.W.2d 584 (1960).

Defendant insists plaintiff cannot recover because a party suing upon an express contract for personal services cannot recover upon proof of services rendered to other parties and not according to the contract; that sale of the stock was not a transfer of the property itself as set out in the contract. McClory v. Schneider, 51 S.W.2d 738 (Amarillo Civ.App., 1932, dism.).

■ The legal fiction of corporate entity may be disregarded where the fiction is used as a means of perpetrating fraud or is relied upon to justify wrong. First National Bank in Canyon v. Gamble, 134 Tex. 112, 132 S.W.2d 100, 125 A.L.R. 265 (1939); Continental Supply Co. v. Forrest E. Gilmore Co., 55 S.W.2d 622 (Amarillo Civ. App., 1932, dism.).

■ Defendant owned 100 per cent of the stock of the corporation, hence rights of no other stockholders were involved. He had full authority to run the corporation himself. Defendant admitted he changed his mind and sold 100 per cent of the stock, rather than the corporate property, because it was to his, not the corporation's, advantage. He admitted he never told plaintiff about his changed plans until after plaintiff secured a willing and ready purchaser. He accepted plaintiff's buyer and used plaintiff's efforts to close the deal on a stock sale basis. He never denied he owed plaintiff a commission but on the contrary approved and initialed a work sheet showing the full amount of plaintiff's commission. Under the particular facts of this case the corporation and defendant were one. If an individual owner of a corporation uses it only for individual purposes, they will be considered to all intents and purposes one and the same. State Nat. Bank v. Encinal Mercantile Co., 277 S.W. 398 (San Antonio Civ.App., 1925, ref.).

As stated in First National Bank in Canyon v. Gamble, supra: "The bank and the loan company, as shown by the undisputed evidence, * * * are separate entities not in fact but only by legal fiction. The peculiar facts are such that adherence to the fiction would promote injustice and lead to a most inequitable result"; so in this case to allow defendant to escape payment of the commission to plaintiff would promote injustice.

In our opinion, under the record, the plaintiff's motion for judgment for $10,460 should have been granted. We so render judgment.

That part of the case pertaining to attorney's fees is reversed and remanded for the purpose of allowing the trial court to hear evidence on and determine the matter of attorney's fees.

Reversed and rendered in part; reversed and remanded in part.