**W.E. STUBBLEFIELD, Appellant,**

v.

**BELCO MANUFACTURING COMPANY, INC., Appellee.**

No. 03–95–00490–CV.

Court of Appeals of Texas, Austin.

Oct. 2, 1996.

W.E. Stubblefield, Liberty, for Appellant.

Mary Black Pearson, Temple, for Appellee.

Before POWERS, JONES and B.A. SMITH, JJ.

PER CURIAM.

Appellee Belco Manufacturing Company, Inc., sued appellant W.E. ("Gene") Stubblefield, its former manager and owner, alleging acts of mismanagement that damaged Belco. Following a bench trial, the court awarded Belco recovery against Stubblefield. We will affirm the trial court's judgment.

In 1986, Steve Jones sold 10,000 shares of stock in Belco to Chemco, Inc., in return for two promissory notes in the amount of $800,-000 and $20,000. The promissory notes were secured by the 10,000 shares of Belco's stock. At the same time, Jones leased to Chemco the land on which Belco was located. The terms of the lease required Chemco to use the premises to operate Belco, a business engaged in manufacturing fiberglass tanks. Stubblefield, the president and sole share-

holder of Chemco, assumed the presidency of Belco after the sale. Jones alleges that Stubblefield, through his ownership of Chemco, was also the controlling or sole shareholder of Belco after the sale.

After Chemco defaulted in paying the $800,000 note, Jones foreclosed on the shares of Belco's stock and bought them at public sale. After the foreclosure sale, Jones became the sole shareholder of Belco. Jones then sued Chemco and Stubblefield for the balance due on the note, unpaid rent, and the amount of a federal tax lien attached to Chemco's property. Belco intervened in Jones' suit asserting that, while he managed Belco, Stubblefield caused Belco to accrue accounts receivable owed by Stubblefield individually, used Belco's funds to pay debts owed by Chemco and by Stubblefield personally, converted Belco's property, and caused a federal tax lien to attach to Belco's assets.

■ In his sole point of error, Stubblefield asserts that the *Bangor Punta* doctrine precludes the trial court from imposing liability on him. *See Bangor Punta Operations, Inc. v. B. & A. R.R.*, 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974). Generally, the right to proceed against an officer or former officer of a corporation for breaching his fiduciary duty to the corporation or for acting beyond his authority belongs to the corporation. *Edlund v. Bounds*, 842 S.W.2d 719, 728 (Tex.App.—Dallas 1992, writ denied); *Governing Bd. v. Pannill*, 561 S.W.2d 517, 524 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.); *see* Texas Business Corporation Act, Tex.Rev.Civ. Stat. Ann. art. 2.42 (West 1980 & Supp.1996).

■ In *Bangor Punta*, a case involving both federal and state causes of action, the United States Supreme Court held that a corporation cannot sue its former manager for mismanagement that occurred before the corporation's majority shareholder acquired his shares. 417 U.S. at 713, 94 S.Ct. at 2584. The Court rested its holding on two propositions: (1) in equity, a shareholder cannot complain of acts of corporate mismanage-

ment if he acquired his shares from those who participated or acquiesced in the allegedly wrongful transactions, and (2) if equity would preclude the shareholder from suing in his own right, the corporation will also be precluded. 417 U.S. at 710, 713, 94 S.Ct. at 2582, 2584. The first proposition, known as the contemporaneous ownership requirement, is a prerequisite to bringing a shareholder's derivative lawsuit. *See* Texas Business Corporation Act art. 5.14 (West 1980); *Crowley v. Coles*, 760 S.W.2d 347, 350 (Tex. App.—Houston [1st Dist.] 1988, no writ); *see also* Fed.R.Civ.P. 23.1. The *Bangor Punta* doctrine has been recognized and applied in Texas to causes of action arising under state law. *See Advanced Business Communications, Inc. v. Myers*, 695 S.W.2d 601, 605–06 (Tex.App.—Dallas 1985, no writ).

Stubblefield takes the position that *Bangor Punta* applies to this case because Jones did not have the rights of a shareholder until he bought Belco's stock at the foreclosure sale and that any wrongs Stubblefield committed preceded Jones' stock ownership. While acknowledging that Jones bought his shares of Belco after Stubblefield committed the wrongful acts, Belco distinguishes *Bangor Punta* on the basis that Jones held a security interest in Belco's shares when the wrongful acts occurred.[1]

The loan Jones made to Chemco was secured by seventy-five percent or more of the outstanding shares of Belco, along with all dividends, interest, and payments accruing on them. The security agreement between Jones and Chemco imposed a number of duties on Chemco designed to protect the value of Belco's stock; these included the requirements that Chemco cause Belco to engage in its established business efficiently and economically, that Chemco prohibit Belco from incurring debt other than accounts payable, that Chemco prohibit Belco from encumbering its property, that Chemco maintain a specified ratio of current assets to current liabilities for Belco, and that Chemco maintain a specified tangible net worth for Belco. Chemco's breach of any covenant in

---

1. Jones does not claim to have retained any direct stock ownership when he sold the 10,000 shares of Belco stock to Chemco.

the security agreement constituted a default entitling Jones to transfer Belco's shares to his own name and to sell them; at any sale, Jones was authorized to buy shares and to pay for them by cancelling a principal amount of the note.

■ Generally a pledgee of stock, regardless whether the stock has been registered in the pledgee's name on the corporation's books, has the same right to protect his stockholder's equity as does the pledgor. *See In re Pittsburgh & L.E. R.R. Sec. & Antitrust Litig.*, 543 F.2d 1058, 1067 (3rd Cir.1976); 18 C.J.S. *Corporations* § 259 (1990). A pledgee of stock is considered under federal law to have a sufficient proprietary interest in the stock to qualify as a contemporaneous owner and to pursue a shareholder's derivative lawsuit. *In re Pittsburgh*, 543 F.2d at 1067. Under Texas law, equitable ownership of corporate stock is an interest sufficient to meet the prerequisite of ownership for pursuing a shareholder's derivative suit. *Roadside Stations, Inc. v. 7HBF, Ltd.*, 904 S.W.2d 927, 931 (Tex.App.—Fort Worth 1995, no writ). We believe that the equitable interest of a pledgee of a corporation's stock is likewise sufficient under Texas law to qualify as ownership for suing on behalf of that corporation. *See id.* In other words, a pledgee of stock may complain of acts of corporate mismanagement occurring while the stock is pledged to him. Because Jones' security interest in Belco's stock gave him the right to complain of corporate mismanagement on Belco's behalf, we conclude that Belco itself is not precluded by *Bangor Punta* from complaining of Stubblefield's acts as former manager of Belco. The trial court did not err in refusing to disqualify Belco from suing on the basis of *Bangor Punta.*

We therefore overrule point of error one and affirm the judgment of the trial court.